*EX PARTE* WILLIAMS, Treasurer.

GIBBES v. GREENVILLE AND COLUMBIA RAILROAD COMPANY.

THE STATE *EX REL.* THE ATTORNEY-GENERAL v. SAME.

1. The whole transaction connected with the closing of an account by note being in writing and set forth in the pleadings; there was no error in passing upon a petition to have such account paid out of the receiver's fund without ordering a reference to take testimony.

2. After order passed constituting the officers of a railroad company, in

effect, receivers of the road, the company continued to conduct its business as before, officers were annually elected and no separate books were opened by them as receivers. During this time a note was given by this corporation in its corporate name, signed by the president and treasurer as such in settlement of an account for running expenses. *Held*, that the existence of such corporation was not interfered with, or its officers displaced, and that the note so given was not made or received with reference to the receiver's fund.

3. Whether a note was received as payment of an account is a question of fact depending upon intention, but such intention appears here from the manner of closing the account by note for balance, together with receipt for such note expressed to be *in settlement*, and a deposit of collaterals to secure the payment of the note.

4. Besides, the payee of such note having transferred it with the collaterals for value, and the collaterals having been sold by the transferree, the original cause of action on the account, if still existing, was then destroyed.

5. If the account was properly chargeable against the receiver's fund, it was a mere equity, which did not attach to the note given by the corporation and to the collaterals intended to secure it.

Before ALDRICH, J., Richland, April, 1881.

This is a petition in the two cases above stated. For a full consideration of the important effect of the order constituting the officers of the Greenville and Columbia Railroad Company, receivers, see *In re Fifty-four First Mortgage Bonds*, 15 *S. C.* 304, and *Ex parte Brown and wife*, *Ibid.* 518.

The petition was filed March 19, 1881.—Answer by certain holders of second mortgage bonds was served April 9, 1881.— On April 19, Judge Aldrich passed the following order:

On motion of Buist & Buist, attorneys of the petitioner, *It is Ordered*, That leave be granted to any of the parties or respondents to take testimony in Columbia, before N. B. Barnwell, Master, or in Charleston, before W. D. Clancy, Master; and that the testimony so taken be used on the hearing by the Court, or before the Master, on any order of reference which may be hereafter made to him.

On the same day the motion in this case, stated in the opinion, was made, and ten days thereafter, the order dismissing the petition was filed. All other facts necessary to a proper understanding of the case, are stated in the opinion, but for

convenience of reference, the order of Judge Melton of June 18, 1872, is here inserted. It was as follows:

2. As the State cannot be required to give security, as other plaintiffs, *It is Ordered:* That the president and directors of the Greenville and Columbia Railroad Company, under the order of, and subject to this Court, continue in the possession and management of the property of all kinds of the said company; and in like manner continue to conduct and carry on the business of the said company; that they make report to this Court at such times as this Court may require, of the condition of the property of all kinds of the said company, of its earnings and profits and expenditures, to the end that such orders may, from time to time, be moved for, as may be necessary and proper for the protection of the property of the said company, and the interests of all parties concerned, pending litigation.

Messrs. *Buist & Buist, Simonton & Barker, Lord & Inglesby*, for appellant.

Mr. *James Conner*, contra.

August 8, 1882. The opinion of the Court was delivered by

MR. JUSTICE McGOWAN.—The Greenville and Columbia Railroad Company was indebted to the South Carolina Railroad Company, by balance of open account, December 30, 1876, and on that day W. J. Magrath, who was president of both companies, struck the balance and executed and delivered to the South Carolina Company a note of which the following is a copy:

                                    "COLUMBIA, S. C., Dec. 30, 1876.
"$51,432.86.

"One day after date the Greenville and Columbia Railroad Company promises to pay to the South Carolina Railroad Company or order, fifty-one thousand four hundred and thirty-two $\frac{86}{100}$ dollars, for value received with interest from January 1, 1875, and interest after maturity at the rate of seven per cent per annum, having deposited with the said South Carolina Railroad Company as collateral security one hundred and three

Greenville and Columbia Railroad Company second mortgage bonds of $500.00 each, which said mortgage bonds shall at any time be subject to exchange for the new first mortgage bonds of the Greenville and Columbia Railroad Company, upon the terms of exchange accepted by other holders of this class of bonds; and in case this note shall not be paid when due we hereby give the said South Carolina Railroad Company authority to sell the said security or any part thereof, for account of ourselves, on the maturity of this note, or at any time thereafter at public or private sale, at their discretion, without advertising the same; and to apply so much of the proceeds of said security to the payment of this note as may be necessary to pay the same, with all interest due thereon and expenses attending sale of said security. If the net proceeds of said security shall not cover the amount due thereon, we hold ourselves bound to pay the balance forthwith after such sale, with interest at the rate of seven per cent per annum.

"W. J. MAGRATH,
"C. H. MANSON, "President."
"Treasurer.

On March 1, 1877, the South Carolina Railroad Company endorsed the said note and delivered the collaterals named therein to Geo. W. Williams, as treasurer of a committee of the directors of the South Carolina Railroad Company, as collateral security for certain loans, indorsements, and advances made by them for said company. On April 10, 1880, the said treasurer sold the 103 second mortgage bonds pledged as collateral security for said note and the proceeds of sale $5,150.00 was credited as of that date upon the note, leaving a balance still due of $68,642.71.

The Greenville and Columbia Railroad Company proved to be insolvent and the case of *James S. Gibbes* v. *The Greenville and Columbia Railroad Company* was filed to foreclose mortgages and sell the road. In this case the creditors of the G. & C. road were called in by publication, but no claim in regard to the said note or its considerations was presented by the South Carolina Railroad Company, although they presented other

claims. The road was sold and the priorities of creditors established, showing a large amount of the mortgage debt still unpaid.

Matters stood in this condition until it was held by the Court that an order of Judge Melton in the case above stated of June, 1872, made "the officers of the Greenville and Columbia Railroad Company officers of the court, and responsible to it in the character of receivers," when on March 14, 1881, after final judgment, Geo. W. Williams, treasurer, as aforesaid, filed this petition *ex parte* in the case, praying to have "the balance of said note paid out of the proceeds of the sale of the Greenville and Columbia Railroad Company, or out of the income paid over to the Master by James Conner, receiver, in preference to all other liens and claims upon said property." A motion was made before Judge Aldrich that a sufficient amount be reserved in the hands of Mr. Barnwell, the Master, to cover the claim of the petitioner, and that the Master be restrained from entering satisfaction on the mortgage given for the purchase-money of the road. Upon this motion the pleadings were read, and Judge Aldrich, holding that the original account, if it ever had any equity to be paid out of the receiver's fund in preference to the mortgage bondholders, was paid and satisfied by the aforesaid note and the collaterals to secure it given by the Greenville and Columbia Railroad Company, refused the motion and dismissed the petition.

Appeal is now made to this Court upon the following exceptions :

1. Because, there being a controversy, and an order having been made to take the testimony on the 19th April, 1881, and the testimony not having been taken before him, the Judge erred in dismissing the petition when it was only before him on a motion made on the 19th April, 1881, that a sufficient amount of money be reserved in the hands of Mr. Barnwell, the Master, to cover the claim of the petitioner, and that the Master be restrained from entering satisfaction on the mortgage given for the purchase-money of the road.

2. Because the Judge erred in not granting the motion on behalf of the petitioner on 19th April, 1881, the fund being

still in the possession of the Court, and being jointly payable to the petitioner if he should establish his claim.

3. Because the Judge erred in deciding as *a matter of fact* that the note was a payment of the account set forth in the petition, when there was no proof before him that such was the intention of the parties, and the note itself was produced and shown to be unpaid.

4. Because the Judge erred in deciding that one who takes a note, secured collaterally, cannot take advantage of the account which was the consideration of the note; whereas he ought to have decided that the consideration of the note becomes a part of the note, and whatever special equities attach to the consideration become a part of the note.

5. Because the Judge erred in deciding that the present holder negotiated for the note in open market, when the allegation is, and it is not denied but admitted, that the present holder received the same as collateral security only, and therefore holds the same for the use of the payee after his debt is paid.

6. Because the Judge erred in not deciding that the consideration of the note so held by the petitioner, being an account for labor and material furnished to the president and directors of the Greenville & Columbia Railroad Company, between the 31st day of January, 1873, and the 30th day of December, 1876, while the property was in the possession of this court, under the order of Judge Melton of the 2d day of June, 1872, and the said labor and material having contributed to the earnings of the road, under the principles of the decree of Judge Pressley, of the 6th day of September, 1879, they were entitled to a priority of payment out of the earnings of said road, and there still being funds in possession of the court, out of which said claim could be paid, the judge should have ordered the claim to have been paid."

*Did the Circuit Judge err, as alleged, in dismissing the petion?* We see nothing in the case to sustain the allegation that the decision was prematurely made because the testimony had not been taken. The whole transaction was in writing, and its proper construction and effect could only be drawn

from the papers themselves. The defence was in the nature of a demurrer, for want of sufficient facts to constitute a cause of action. If, according to the papers exhibited, there could be no ground for the special equity claimed to give this debt of the G. & C. R. R. Co. a preference over mortgage bond-holders, it was proper to decide it at once, without the delay and expense incident to a fruitless reference.

It has been lately decided that Judge Melton's order of 1872, in the case of *James S. Gibbes* v. *The Greenville & Columbia Railroad Company, supra,* made the president and directors of the company officers of the court, substantially receivers, although somewhat "anomalous" in character. It seems that the full import of that order, as subsequently declared, was not understood until Judge Pressley's order in the same case was entered in 1878. In the meantime the officers of the company, elected as usual by the stockholders, without making returns to the court, or opening separate books, or contracting, or in any other way *acting as* receivers, continued to conduct the affairs of the company in all respects as they had done before. During this period an account, in the ordinary course of business, was contracted, as alleged, with the South Carolina Railroad Company, which that company, taking no notice whatever of the order of 1872, charged not against the officers as receivers, but in the usual way against the Greenville and Columbia Railroad Company.

It may be that the identity of the persons described as receivers with the regular officers of the company tended to some confusion in this respect; but making every allowance for that, we cannot doubt that the parties were ignorant at that time of the effect of the order in respect to contracting accounts and their powers under it; and that credit was not in fact given to the officers of the road as receivers, or on the faith of a receiver's fund, but, as the form of the account indicates, to the corporation of the Greenville and Columbia Railroad Company.

Even if the parties had understood the full effect of Judge Melton's order, as we conceive, that order did not and could not interfere with the corporate existence of the company, or

displace the officers who held their places under an Act of the Legislature and the election of the stockholders. *High, Receiv.*, § 391, and notes; *Jones, R. R., Sec.*, § 519. But if, recognizing the latent force of the order of 1872 as lately declared, and giving it retroactive effect, we must now hold that said account, contrary to its terms and the intention of the parties, was in fact against the *officers* and *receivers*, and by a special equity was chargeable upon the income in preference to the lien of the mortgage bondholders, it is clear that the South Carolina Railroad Company accepted in liquidation of that account a note of the Greenville and Columbia Railroad Company as such. The tenor of the note is, "The Greenville and Columbia Railroad Company promises to pay," and it was signed by W. J. Magrath, *President*, and C. H. Manson, *Treasurer*, and was secured by collaterals which were the property of the company.

The extent of a receiver's powers is shown by the definition of his office: "A receiver is an indifferent person between the parties to a cause, appointed by the Court to receive and preserve the property in litigation *pendente lite*. He is not the agent or representative of either party to the action, but is uniformly regarded as an *officer of the court*, exercising his functions in the interest of neither the plaintiff nor defendant, but for the common benefit of all parties in interest."

In this view of the case it will not be necessary to examine the items of account as to their character. The controlling question is whether the note and collaterals were taken merely in substitution for, or in payment and *satisfaction* of the account. There is some conflict in the cases, but we understand the law on the subject to be as stated by Judge Withers in the case of *Townsends, Arnold & Co. v. Stevenson & Walker*, 4 *Rich.* 62. "One rule touching the question in this case certainly is that upon a sale and delivery of goods, the promise to pay, as implied by law, is not discharged as a cause of action by merely receiving a note, whether executed by the debtor or a third person, for the existing debt. To discharge the existing cause of action, such note must be *received in payment* of the debt arising upon the sale and delivery. The

question is what was the intention and understanding of the parties."

Whether the note and collaterals received in this case were taken in *payment* and *satisfaction* of the account was a question of fact which the judge determined against the petitioner; and as the proceeding is somewhat analogous to an action at law upon the account, alleging that it is still unsatisfied, we possibly might rest upon the determination of the question of fact by the Circuit Judge. But while it is the supposed virtue of the account which is invoked here, the right to the priority claimed is, if it exist, an equity, and we will therefore consider the petition as a " case in chancery," and examine the evidence.

The exhibits show that the account against the Greenville and Columbia Railroad Company contained two columns, *debit and credit.* From time to time as payments were made they were entered in the *credit column.* On the day of settlement the payments were aggregated and deducted from the charges, and there was found to be a balance against the G. & C. Co. of $51,432.86. For this amount the note was taken and *the item added,* the last *in the payment column,* and the account balanced with the statement. " Dec. 31, *by note dated December* 30, 1876, *secured by* 103 *second mortgage bonds of your company,* $500.00 *each, with coupons, payable July* 1, 1872, *in settlement of balance.*" The following receipt was given:

"Received from C. H. Manson, treasurer, Greenville and Columbia Railroad Company, their note dated Dec. 30, 1876, at one day date, with interest from Jan'y 1, 1875, secured by second mortgage bonds as stated therein, *in settlement of the above account.*

"J. H. WILSON,
"Treas. S. C. R. R. Company."

It seems to us that the manner of closing the account shows that the parties intended the note and collaterals to be *in payment and satisfaction of the account* which was formally balanced. The words " *in settlement of balance* " are the words usually employed to express that purpose. Are they not as

strong that the parties intended payment, as the words "settled in full," which, not in closing a mere open account but upon an official bond, under seal, were held to have that effect in the case of *Griffin* v. *Addison*, 3 *S. C.* 105. See *McLure* v. *Askew*, 5 *Rich. Eq.* 162, and *Kirkland* v. *Cureton*, 4 *S. C.* 122. That this was the sense in which these words were used in this case is strengthened by the fact that the note was *secured by* second *mortgage bonds*, which were delivered at the time, to the full amount of its face value.

In States where the equity of the vendor of land is recognized, it has been held that taking *other security* was evidence of a waiver of equity. See *McCorkle* v. *Montgomery*, 11 *Rich. Eq.* 114, and *Mackreth* v. *Symmons*, 1 *Lead. Cas. Eq.* 242. In the light in which the parties acted the account was no more than a claim against the G. & C. Co., and the note was the same and had the advantage of being liquidated, bearing interest and being *secured by collaterals*. Under the circumstances there was no object for leaving the account unsatisfied, and we have no doubt that *payment was intended*.

But if the circumstances under which the note and collaterals were taken left the intention of the parties at all doubtful, that was put beyond doubt so far as the South Carolina Company was concerned, when they transferred the note and its collaterals for a valuable consideration to the petitioner. "Although the receiving of a note is not payment unless received as such, yet if the creditor place the note beyond his power and control so that it cannot be delivered up to be cancelled, the note is payment and the original cause of action is extinguished." Judge Wallace in *Adger & Co.* v. *Pringle*, 11 *S. C.* 535 ; *Townsends, Arnold & Co.* v. *Stevenson & Walker*, *supra*. Here the note is brought into court, not, however, by the South Carolina Railroad Company but by their assignee, who has sold the collateral bonds, and the parties cannot be placed in *statu quo*.

It is not necessary to enter into the question as to what rights or equities the South Carolina Company transferred to the petitioner, or what was the effect of the transfer to him, being merely as *collateral security* for a debt. In the view

taken the account was extinguished, and there was nothing to transfer but the note and the collaterals which secured it. We may say, however, that if as contended for the petitioner, the South Carolina R. R. Company had the right at any time to set up a *special equity on the account* against a receiver's fund, that right never amounted to an *express* lien like a mortgage; but was a mere equity which did not go with the note and the collaterals intended to secure it.

The petitioner, in the course of business, received the note and its collaterals as simple obligations of the Greenville and Columbia Railroad Company. He was authorized to sell the collaterals and he did so, but he still holds the balance of the note against the company in the right in which he acquired it. He has all the security he contracted for. To adjudge now that he has the additional subsequently discovered *equity* to be paid out of the proceeds of sale of the road in *priority* to *bondholders*, who had a prior mortgage upon it, would be to take from subsisting liens and give to him that which was not within the contemplation of any of the parties or the express terms of his contract.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., *dissenting.*